GILDERSLEEVE, J.
The parties to this action are husband and wife. The husband brings the action for the purpose of securing a separation, upon the ground of abandonment. The wife denies that she ever deserted her husband, alleges that he deserted her, and demands judgment that the complaint be dis-' *287 missed, and that a separation from bed and hoard forever be decreed to her. They have now lived apart for about one year and .eight months. During this time the children of the marriage, of whom there are two,—i. e. a girl, of about ten years, and a boy, of about seven years,—have been in the custody of the mother, with the privilge to the father of visiting them from time to time, and for a portion of this period he has had them with him certain hours during the day. The parties have been married for upwards of ten years. The testimony certainly discloses no desire-on the part of the wife to again consort with her husband. The husband asserts, somewhat feebly, we think, and with an absence of spirit bom of devotion to the wife, that she is still welcome to his home, and that it is his wish that their marital relations should be resumed. We think, however, it may be truthfully said that one is as anxious for a separation as the other. It. is manifest from the record that each has shown a desire, evinced by acts and by the nature of the correspondence between them, to keep within the mies of law favorable to his or her side. The-correspondence between the parties and the manner in which it Was conducted seem to indicate a disposition on the part of each to find or to establish in the acts or statements of the other some ground that would warrant a separation. It is clearly a case of an eruption in a home that for many years was well regulated and peaceful. The testimony discloses no acts of violence on the part of either, and nothing occurred between the parties that ,may justly be characterized as cruel and outrageous. The great trouble with the case arises from the fact that the conduct of the parties while not beyond reproach, has been so decent and amiable that the facts seem too trivial and insignificant for judicial consideration. By degrees, however, their relations became stained, and they no longer lived happily together, and the acts followed which we are now called upon to characterize and construe. It. is really a contest for the custody of the children, and each parent, seeks a preference over the other in their care and management. Indeed, the learned counsel for the wife state in their brief that the only question in the case that concerns the wife is the custody of the children. It is not only our duty, nor is it our privilge, to consult the wishes of the parties to this disagreeable controversy, nor must we be influenced in reaching a conclusion by the consequences thereof. In approaching the consideration of this case, we must bear in mind the policy of the law, as well as the specific rules of law applicable.
The family is the origin of all society and of all government. The happy family, well organized and successfully discharging its functions, by strengthening the parents for the proper discharge of life’s duties, while it fits the children to succeed to those duties, is the highest type of human goodness, and the surest source of human happiness. The whole framework of government and laws has been said to exist only to protect and support the family, so that it may develop and proect the character of its members. The dearest interests of the whole community require that it *288 should he made as far as possible inviolable. People v. Olmstead, 27 Barb. 9.
It has been well said by Bishop, in writing upon the claims for a severance of the matrimonial contract, upon the ground of incompatibility of temperament (see 1 Bish. Mar. & Div. § 743), that:
“The causes of complaint must be grave and weighty. Mere turbulence of temper, petulence of manner, infirmity of body or •mind, are. not numbered amongst those causes. When they occur, their effects are to" be subdued by management, if possible,' •or submitted to with patience, for the engagement was to take for better, or worse; and, painful as the performance of this duty may be, painful as it certainly is in many instances which exhibit -a great deal of the misery that clouds human life, it must be attempted to be sweetened by the consciousness of its being a duty, •and a duty of the very first class and importance.”
Again, it is said in McBride v. McBride, 31 St. Rep. 631, that:
“¡Necessity to endure is one of the evils attending the marriage state, and parties should not for trivial reasons be put asunder by judicial decree.”
A decree of separation cannot be awarded unless a legal ground therefor is established by a fair preponderance of credible testimony. The first question for determination under the issues raised by the pleadings is this: Did the defendant'abandon the plaintiff, as alleged in the complaint without justifiable cause ? If the testimony calls for an answer to this question in the affirmative, a separation must be granted.
Professor Dwight, in Uhlman v. Uhlman, 17 Abb. N. C. 236, defined an “abandonment” as follows:
“It seems to me that to constitute an abandonment, under the statute, two elements are necessary. One is a final departure with an intention of not returning. * * * The essential fact, I1 think, is that there should be no sufficient reason for leaving.”
In Sergent v. Sergent, 33 N. J. Eq. 204, it was held that three things are necessary to the act of desertion:
“First, cessation of cohabitation; second, the intent to desert in; the mind of the defendant; third, that there is not consent on the part of the complainant.” '
It is well established that there are three grounds upon which' a justifiable separation may be based: First, by consent; second, by such conduct on the part of the other as is, as against such other, a cause for divorce; third, by such conduct on the part off the other as is cruel and outrageous, though not amounting to a •cause for divorce. 5 Am. & Eng. Enc. Law, p. 805. The first two grounds must be dismisssed in the case at bar, for the reason that the evidence will not support either. Can it be said that the testimony before us brings the case within the third ground? HI treatment or misconduct may be of such a character as to furnish justification for desertion, and still be insufficient in law to support a decree of separation. See Gillinwaters v. Gillinwaters, 28 Mo. 60; Pidge v. Pidge, 3 Metc. (Mass).) 257. Does the evidence dis *289 close anything more than a temporary separation of the parties because of a disagreement? The defendant did leave the home long occupied by the parties as husband and wife, taking with her their two children. Was her leaving willful and wrongful and with the intention not to return? Good and substantial reasons are required to be given by the deserting party as a justification for an abandonment. Are the reasons that defendant gives for leaving her home such as may be regarded in law as sufficient to, justify her action? This is the vital point in the case.
In addition to the foregong, as embodying the principles of? law that we consider applicable here, we may state that we take ' the definition of “abandonment” as given by the coqrt of appeals in Williams v. Williams, 130 N. Y. 197; 41 St. Rep. 280, to wit:
“That term, as used in the law of divorce, contemplates a voluntary separation of one party from the other, without jutification, and with the intention of not returning.”
We are able to gather from the testimony a very clear concepition of what the defendant’s intention was at the time of leaving. Her wishes and intention, as subsequently expressed in her letter of May 4, 1894, to her husband, fully coincide with the conclusions that must, be reached from the testimony as to what occurred and as to what she said. The language of the latter, pertinent to the question we are now considering, is as follows:
“If you really wish to live with me, you will have to recognize that a wife has some rights which a husband is bound to respect.. I shall certainly insist on the entire management of the servants, and, if there are any complaints to be made or orders given, it should be through me. I shall expect to be treated with proper respect before the children and servants, and I will not have your brother and sister come to the house to insult me again. If they wish to visit you, they can do so; but I must know of it, so that 1 may be absent. If you are willing to concede to these reasonable demands, you can call for the children and me, and we can .stop at some hotel here in Hew York, or the vicinity, as I have closed up the house for the summer.
Mr. Myers had an interview with the defendant, with the object of bringing about a reconciliation. The defendant testified as follows:
“I told Mr. Myers I had stood a great deal with Mr. Simon, and had gone through a great deal, and that only under certain conditions would I live with him.”
This was on cross-examination. On her direct examination, she made the following statement:
_ “I told him (Mr. Myers) I had stood a great deal from Mr. Simon, and things had gone so far now that he would have either *o apoligize— Well, I told him, I believe, that night, I bad made up my mind that Mr. Simon would have to give up the management of the house, and that I must not be insulted before the children and servants, and that he would have to keep his relatives away from the house while I was there.”
*290 These conditions seem to be substantially the same as those sefc forth in her letter of May 4th. She again testifies that:
“The cook said that, if I were going to leave the house, she wanted to go with me; and, again, I told him (plaintiff’s brother) I wanted his folks (plaintiff’s) put out of the house; it would save me the trouble of leaving.”
From the foregoing, when considered in connection with all the other testimony in the case,' it is quite as clear as that the parties are now living apart that, when defendant left, it was with the intention of returning if plaintiff complied with the conditions she named. Those conditions consist of acts on the part of the plaintiff, of failures to act, or to assent to her wishes, and are practically all that’ constitute the grounds upon which the defendant’s justification for deserting her husband rests. We think they call for such conduct on the part of the husband as the wife had a right to exact. They impose a duty which the husband should have recognized. The failure to assent to these reasonable requests* justified the wife in going to her father’s house.
From a careful consideration of the entire case, it must be held that the evidence discloses nothing more than a temporary separation of the parties because of a disagreement. . The husband takes his wife “for better, or worse.” He promises to love, honor, and comfort her. It is his duty to treat her with tenderness and affection. When she is assailed, he should always come forward as her champion and protector. He should palliate all her faults, and do all in his power to enable her to carry the burdens of life-lightly and cheerfully. When he ignores her presence, and does, not speak to her for days at a time, as the plaintiff in this case did, he is clearly at fault. The conduct of the plaintiff, during' this week in April, which seems to have proved the crucial week in their married life, and at times prior thereto, was such as was-calculated to disturb the peace of the home and the comfort of the wife. Without urgent need or good reason he discharged the governess at night, thereby imposing upon his wife the duty of caring for the children. He humiliated her in the presence of the servants and children, telling her to “shut up; to keep her mouth shut.” He called his relatives about him knowing that their presence was offensive to his wife, and they were present at the house at the time- the wife left the house of her husband and went to her father’s. We think the circumstances were such as justified her in seeking, for the time, the quiet and peace that her father’s home afforded.
We might continue the discussion, but, having reached the conclusion already announced, it becomes unnecessary to do so. It is sufficient to add that, while the conduct of the husband has been such as to warrant the wife in temporarily leaving him, the evidence falls far short of establishing valid grounds for granting to the defendant the affirmative relief she demands. Both the complaint and the claim for affirmative relief in the answer should be dismissed, without costs.
We must leave the case here without disposing of the vital *291 issues sought to be litigated iu this action, namely, the custody of the children. We are not disposed to shirk or avoid that issue, 'but consider that it arises only as incidental to a decree of separation, and that, in view of the conclusion reached, we are without jurisdiction in the matter. We have given the case a most ¡thorough, honest and earnest consideration, and deeply regret that we are unable so to dispose of it as to settle the differences between this married couple. We doubt that, even after the experience of this long and painful litigation, they can agree to live bappily together. If they cannot, they should meet with a view of making reasonable concessions each to the other, and agree .upon an equitable and proper separation. As we interpret and construe the evidence, the law cannot, at present, separate them.
Defendant’s counsel will prepare a decision and judgment, and notice same for settlement.